**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**May 22, 2013**

# In the Court of Appeals of Georgia

A13A0791. GALIMORE v. THE STATE.

BARNES, Presiding Judge.

Roderick Galimore pled guilty to burglary, and following a later hearing the trial court ordered him to pay the victim restitution in the amount of $3,100. On appeal from the restitution award, Galimore claims that (1) the amount of restitution ordered by the trial court was not supported by the evidence and (2) the trial court erred in failing to make findings of fact relating to each of the statutory factors that must be considered in determining the nature and amount of restitution. For the reasons set forth below, we disagree with Galimore and affirm.

Restitution "is not synonymous with civil damages." (Citation and punctuation omitted.) *In the Interest of E. W.*, 290 Ga. App. 95, 97 (3) (658 SE2d 854) (2008). The amount of damages is one of the factors to be considered by the trial court in ordering

restitution. See OCGA § 17-14-10 (a) (4). The trial court must also consider, among other things, "the offender's present financial condition and future earning capacity, as well as the goal of rehabilitation to the offender." (Citation and punctuation omitted.) *In the Interest of E.W.*, 290 Ga. App. at 97 (3). The burden of showing the offender's financial resources, and the needs of his or her dependents, is placed on the offender. Id. However, the amount of restitution awarded cannot exceed the amount of the victim's damages, and the State has the burden of demonstrating the amount of the victim's loss. See OCGA §§ 17-14-7 (b); 17-14-9. In this context, damages means "all special damages which a victim could recover against an offender in a civil action . . . based on the same act or acts for which the offender is sentenced, except punitive damages and damages for pain and suffering, mental anguish, or loss of consortium." OCGA § 17-14-2 (2). The appellate court's duty is to review "the transcript to determine whether each party has met his or her specified burden and determining whether a restitution award was supported by the preponderance of the evidence." (Punctuation and footnote omitted.) *McClure v. State*, 295 Ga. App. 465, 466 (673 SE2d 856) (2009).

The transcript shows that Galimore stole the victim's laptop computer, four Dell desktop computers, an "all in one" desktop computer, a server (collectively, the

"computer-related items"), a 27 inch television, a DVD player, a game console, hand and power tools, and a jar of coins. The victim testified to the value of the stolen items individually and that the total value of the property stolen was approximately $3,500. Galimore's attorney cross-examined the victim as to how he arrived at his valuations and then argued during closing that the evidence was insufficient to establish the fair market value of the stolen property. After closing arguments, the trial court informed the victim that he was not entitled to recover the "value new" of the stolen property and then re-opened the evidence. In response to the trial court's questioning, the victim testified that if he were to sell the laptop now at fair market value, he would "ask at least $750 for it," although he had earlier testified that the value of the laptop was $1,100. Consistent with the written order entered the same day, the trial court indicated that it would award restitution of $3,100.

1. When restitution is ordered for property that the defendant stole or destroyed, the amount of damages is based on the fair market value of the property. See *Austin v. State*, 315 Ga. App. 713, 715 (727 SE2d 535) (2012). Galimore contends that the trial court's award was improper because the victim's testimony showed that he valued much of the stolen property based on replacement cost and not fair market value. See *Austin*, 315 Ga. App. at 715 (in determining fair market value,

3

it is not sufficient for victim merely to provide either the original cost or replacement cost of stolen property). In reviewing the trial court's ruling, "we consider whether the evidence shows the fair market value of [the] items, the condition of the items, or an appropriate method of discounting the items from their replacement value to their fair market value." (Citation and punctuation omitted.) *Gray v. State*, 273 Ga. App. 747, 749 (2) (615 SE2d 834) (2005). Further,

> [o]pinion evidence as to the value of an item, in order to have probative value, must be based upon a foundation that the witness has some knowledge, experience or familiarity with the value of the property or similar property and he must give reasons for the value assessed and also must have had an opportunity for forming a correct opinion.

(Citation and punctuation omitted.) Id. at 750 (2).

(a) Here, the evidence of value as to the computer-related items was strong. The victim was an IT professional who frequently dealt in buying and selling of computer equipment, and confirmed to the trial court that he thereby was able to assess reasonable values of such equipment. He described the various computers and the server with particularity and explained that he had researched market values on eBay. Although during cross-examination the victim sometimes referred to replacement costs in explaining how he arrived at his valuations, the trial court could

4

conclude that, other than the laptop, the victim testified to the fair market value of the computer-related equipment and not simply the cost of purchasing a new replacement. For example, the victim valued the server at $250 based on "the replacement cost on eBay," which his testimony also showed to be "a used price," thus reflecting the market value of the stolen server. The trial court made it clear to the victim that he was not entitled to ask for the "value new," after which the victim clarified that he had been speaking to "fair market . . . value on a used computer" as to the four Dell desktop computers. The trial court also indicated its intent to reduce the victim's initial valuation of his laptop to the $750 amount the victim testified he would accept "if [he] sold it at fair market value."

(b) The victim's basis for testifying to the valuation of the non computer-related items is less clear. However, on cross-examination defense counsel asked the victim if he was "basing everything off receipts." The victim acknowledged that he based the value of the laptop off of its receipt, but that as for "everything else," he "found the current market value based off the [sic] eBay prices."[1] Thus, apart from

_____

[1] As to the television and the DVD player, the victim also testified that he researched the replacement cost on Walmart.com, but the evidence did not necessarily show that victim valued those items at something other than fair market value. For example, he indicated that the television's replacement cost was $150 but that he valued it at $100.

his initial testimony as to the value of the laptop, and except as noted below with respect to the hand tools and the jar of coins, there is evidence from which the trial court could conclude that the victim's itemized valuation testimony constituted his opinion of the fair market value of such property, including his Wii gaming system, power tools, television, and DVD player, and that such testimony was based on his knowledge and familiarity with the market for that property as used. "The witness gave the basis for [his] opinion which would leave the weight and credibility for the [trial court]." *Burch v. Lawrence*, 150 Ga. App. 351, 352 (1) (258 SE2d 35) (1979). See OCGA § 24-9-66 (2012) ("Direct testimony as to market value is in the nature of opinion evidence. One need not be an expert or dealer in the article in question but may testify as to its value if he has had an opportunity for forming a correct opinion."); *Mayfield v. State*, 307 Ga. App. 630, 633 (2) (c) (705 SE2d 717) (2011) ("[t]he owner of property is considered to be qualified to state his opinion as to value") (citation, punctuation, and emphasis omitted); *Barnes v. State*, 239 Ga. App. 495, 498 (1) (521 SE2d 425) (1999) (it is "not objectionable that [the owner's] opinion as to value might, in some cases, be based on hearsay") (citation, punctuation, and emphasis omitted).

6

(c) We agree with Galimore, however, that the evidence was insufficient to support an award for the value of the victim's hand tools and a jar of coins. The victim valued his "total kit" of stolen hand and power tools at $300. As to the power tools, the victim testified the value of his "DeWALT drill" and "DeWALT jigsaw" was $150 and $90, respectively, but he also admitted that he had "difficulty" placing value as to his "hand tools," which he identified as "screwdrivers, nut drivers, pliers, wire cutters, that sort of thing." The victim then acknowledged on cross-examination that his valuation of the hand tools was a "shot-in-the-dark guess" and that he did not actually know what hand tools were stolen. As the victim's testimony was shown to be speculation and without foundation, the evidence does not support an award for the fair market value of the victim's "total kit" of tools to the extent it included his hand tools. See *Gray*, 273 Ga. App. at 750 (2) (opinion testimony without proper foundation is inadmissible as speculation).

The victim also valued a gallon jar of coins, filled approximately a third of the way full with "everything from half dollars down to pennies and dimes," at $200. The victim also testified, however, that he was "guessing" as to that amount, and that, in fact, he "[did not] know." Given these qualifications, the victim's opinion of the value of the coins in the jar was speculative and without probative value. And although a

7

jar of coins must have some value, the trier of fact was not given any pertinent information from which to determine the number or relative distribution of the various denominations of coins therein, and so the State did not present any evidence from which the trier of fact could determine the fair market value of the coins beyond resorting to conjecture. See generally *Jaraysi v. Sebastian*, 318 Ga. App. 469, 477 (2) (733 SE2d 785) (2012) ("damages cannot be established by speculation, conjecture and guesswork") (punctuation and footnote omitted).

(d) Notwithstanding the foregoing, even taking into consideration that the trial court failed to accept the victim's initial valuation of the laptop, a trier of fact could conclude that the fair market value of the computer-related items was $2,250,[2] and that the fair market value of the other property, excluding any allocation of value for the hand tools and excluding the jar of coins, was $840.[3] This corresponds almost exactly to the $3,100 awarded by the trial court, an amount which would have been

---

[2] Excluding the receipt-based valuation of the laptop, the victim's testimony as the value of the computer-related items was as follows: one laptop, $750; four Dell laptop computers, $250 each, for a total of $1,000; one "all-in-one" computer, $250; and a server, $250.

[3] Excluding the jar of coins and the "total kit" of tools, the victim's valuation of his non computer-related items was as follows: Wii gaming system, with multiple controllers and a dozen games, $400; television and DVD player, $200; and power tools, $240.

8

recoverable by the victim in a civil action as damages. See, e. g., OCGA § 17-14-2 (2) (damages for purposes of restitution means, with certain exceptions, "all special damages which a victim could recover against an offender in a civil action"); *Esprit Log & Timber Frame Homes, Inc. v. Wilcox*, 302 Ga. App. 550, 553 (1) (691 SE2d 344) (2010) (even assuming some costs claimed as damages by the plaintiff were not supported by the evidence, the damage award was within range of the evidence and affirmed). We conclude, therefore, that the State met its burden of presenting sufficient evidence to support the amount of restitution.

2. Galimore also contends that the trial court erred by not making findings of fact relating to each of the statutory factors that must be considered in determining the nature and amount of restitution. We disagree. When a trial court orders restitution it "shall" consider the factors set forth in OCGA § 17-14-10 (a) (1) - (8). See *Turner v. State*, 312 Ga. App. 799, 801 (1) (720 SE2d 264) (2011). Here, the trial court heard evidence on damages, which were required to be proven by the State. Galimore chose not come forward with any evidence, notwithstanding that "[t]he burden of demonstrating the financial resources of the offender or person being ordered to pay restitution and the financial needs of his or her dependents shall be on the offender or person being ordered to pay restitution." OCGA § 17-14-7 (b).

9

Galimore points to nothing in the transcript that would show that the trial court did not consider the appropriate factors in determining the restitution award. Further, "based on an amendment to the restitution statutes in 2005, a trial court is no longer required to make written findings of fact concerning the factors to be considered in determining the restitution amount." *Futch v. State*, 314 Ga. App. 294, 298 (3) (a) (723 SE2d 714) (2012). See *McCart v. State*, 289 Ga. App. 830, 832 (1) (658 SE2d 465) (2008) ("Given that the defendant has the burden of showing some of the factors, that he or she might forego presenting such evidence, and that the decision is based on the preponderance of the evidence, it is unnecessary to require the ordering authority to make a finding on each factor."). Accordingly, Galimore fails to show error.

*Judgment affirmed. Miller and Ray, JJ., concur.*